**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**SEAPLUS LINE CO. LTD.,**

                    **Plaintiff,**         05 Civ. 4813 (JGK)

     - against -                  <u>OPINION AND ORDER</u>

**BULKHANDLING HANDYMAX AS,**

                    **Defendant.**
_____

**JOHN G. KOELTL, District Judge:**

The defendant, Bulkhandling Handymax AS ("Bulkhandling"), has moved pursuant to Supplemental Rules E(4), E(5), E(6), and E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure to vacate, or to reduce, an order of maritime attachment obtained against it by the plaintiff, Seaplus Line Co. Ltd. ("Seaplus") or, in the alternative, to substitute a letter of undertaking for the attachment. The defendant also moves for security in connection with a claim for costs in a pending arbitration.

**I.**

Seaplus is a corporation organized under Korean law, with its principal offices in Seoul, South Korea, and the owner of the bulk carrier M/V JI QING MEN (the "vessel"). (Compl. ¶ 3.) In March 2005, Seaplus entered into a charter agreement with Bulkhandling under which Bulkhandling would charter the vessel

1

for $26,500 per day for a period of five to eight months. (Compl. ¶ 5; Time Charter, Exh. 2 to Affirmation of William J. Honan dated July 28, 2005 ("Honan Aff.").) Seaplus's verified complaint in this action, filed on May 19, 2005, alleges that in April 2005 Bulkhandling notified Seaplus that it would not take delivery of the vessel, and that Seaplus commenced an arbitration proceeding against Bulkhandling in Hong Kong (the "Hong Kong arbitration") to resolve a claim that Seaplus suffered a loss of more than one million dollars due to Bulkhandling's alleged breach of the charter agreement. (Compl. ¶¶ 7-10, 12.) Seaplus then commenced this action to obtain an order of maritime attachment as security for a possible award in the Hong Kong arbitration, including attorney's fees and costs, pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure. (Compl. ¶¶ 12-15.) This Court issued an ex parte order of maritime attachment in the amount of $1,300,000 on May 19, 2005, the same day Seaplus filed its verified complaint.

**II.**

Due to the "transient nature of vessels and other assets in the shipping business, and the special difficulties maritime plaintiffs consequently face in gaining jurisdiction over defendants and collecting any judgments won," maritime attachments are considerably easier to obtain than other pre-judgment attachments. Aqua Stoli Shipping Ltd. v. Gardner Smith

Pty Ltd., 384 F. Supp. 2d 726, 727-28 (S.D.N.Y. 2005) (citing Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 581-82 (2d Cir. 1963)). Supplemental Rule B therefore provides that, if upon review of the plaintiff's verified complaint and supporting affidavit, the Court determines that the plaintiff has a maritime claim against the defendant in the amount sued for, and that the defendant is not found within the district, the Court "must...enter an order... authorizing process of attachment and garnishment" of the defendant's property located in the district up to the amount sued for. Fed. R. Civ. P. Supp. R. B(1)(b); see also HBC Hamburg Bulk Carriers GMBH & Co., KG v. Proteinas y Oleicos S.A. de C.V., No. 04 Civ. 6884 (NRB), 2005 WL 1036127 at *2 (S.D.N.Y. May 4, 2005). As the language of Supplemental Rule B indicates, it is mandatory that the order of maritime attachment issue once this prima facie showing has been made. Parkroad Corp. v. China Worldwide Shipping Co., Ltd., No. 05 Civ. 5085 (GBD), 2005 WL 1354034 at *1 (S.D.N.Y. June 6, 2005). The Court's order of maritime attachment was entered in accordance with Supplemental Rule B.

Although Supplemental Rule B requires that an order of maritime attachment must issue upon a minimal prima facie showing, Supplemental Rule E(4)(f) provides that "any person claiming an interest in [the attached property] shall be entitled to a prompt hearing at which the plaintiff shall be

3

required to show why the...attachment should not be vacated...." Supp. R. E(4)(f), Fed. R. Civ. P. The provision "is designed to satisfy the constitutional requirement of due process by guaranteeing...a prompt post-seizure hearing at which [the defendant] may attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Id., Advisory Committee Note, 1985 Amendment.

It is clear from the text of Supplemental Rule E(4)(f) that Seaplus, the party having obtained the maritime attachment, bears the burden of showing that the attachment should not be vacated. Supp. R. E(4)(f), Fed. R. Civ. P., see also Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., No. 05 Civ. 7173 (NRB), 2005 WL 2446236 at *1 (S.D.N.Y. Oct. 3, 2005). However, the parties, and to some extent the courts, differ on precisely what showing is necessary to satisfy that burden.

Seaplus argues that Supplemental Rule B creates a right to an attachment once the prima facie showing has been made, and that the hearing afforded by Supplemental Rule E(4)(f) only requires the plaintiff to show that the elements of the prima facie case alleged in the verified complaint are in fact satisfied. Seaplus therefore argues that (assuming that the plaintiff does in fact have a maritime claim against the defendant) the hearing is limited to ensuring that "the defendant could not be found within the district and that the

assets were properly in the hands of the garnishee when the writ was served." (Pl. Mem. in Opp'n to Def.'s Mot. to Vacate or Reduce Maritime Attachments ("Pl. Mem.") at 3-4.)

Bulkhandling argues that the order of maritime attachment must be vacated or, in the alternative, reduced unless Seaplus can demonstrate that it is necessary for one of the two purposes of a maritime attachment, namely to obtain jurisdiction over Bulkhandling or to secure satisfaction of any award Seaplus might obtain in the Hong Kong arbitration. (Reply Mem. of Law of Bulkhandling Handymax AS in Supp. of its Mot. to Vacate or Reduce Maritime Attachments ("Def. Reply Mem."), at 2-3.)

The Court of Appeals for the Second Circuit has not directly addressed this issue. This Court is persuaded, however, that some showing beyond the prima facie case is required. As the Court of Appeals has noted, there are two rationales for maritime attachments: "First, attachment provides a means to assure satisfaction if a suit is successful; the second purpose is to insure a defendant's appearance in an action...." Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002) (internal quotation marks omitted). Although, given the transient nature of assets in the shipping business, an attachment order may be obtained with only a minimal showing, it is not reasonable for that order to remain

in effect where it is not necessary to effectuate either of Supplemental Rule B's purposes.

The Court therefore adopts the standard applied in _Allied Maritime, Inc. v. The Rice Corporation_, No. 04 Civ. 7029 (SAS), 2004 WL 2284389 (S.D.N.Y. Oct. 12, 2004), _motion for reconsideration denied_, 361 F. Supp. 2d 148 (S.D.N.Y. 2004). Noting the two recognized purposes of maritime attachment, Judge Scheindlin held in _Allied Maritime_ that, in order to show that the attachment should not be vacated, the plaintiff must demonstrate "_either_ that the attachment is necessary for the plaintiff to obtain jurisdiction in a convenient district, _or_ that the plaintiff needs the security of the attachment to satisfy any judgment it may win in the underlying suit." Id. at *2. Where neither of these justifications for attachment is implicated, there is no basis for an order of maritime attachment to remain in force and the attachment should be vacated.

While Seaplus is correct that "Supplemental Rule B does not require a plaintiff to attest, as a condition of obtaining the writ, that the defendant's credit is suspect," (Pl. Mem. at 3), that is wholly beside the point. Supplemental Rule B is entirely silent on what standard applies to the subsequent review of the order of attachment at a hearing pursuant to Supplemental Rule E(4)(f). While Supplemental Rule B does

6

afford a "right to security in aid of arbitration," (Pl. Mem. at 3), on its face it is only a right to obtain an order of attachment upon the minimal showing specified in that rule, subject to subsequent review.

Seaplus's argument depends on the premise that the standard for demonstrating "why the maritime attachment order should not be vacated" under Supplemental Rule E(4)(f) is the same as the standard for when such an attachment order should issue in the first instance, which is governed by Rule B alone.  However, it does not follow that the same minimal showing required to obtain an attachment under Supplemental Rule B is sufficient to keep the attachment following a post-attachment hearing.  In particular, nothing in Supplemental Rule E(4)(f) requires that result.  See <u>Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A.</u>, 169 F. Supp. 2d 1431, 1358 (M.D. Fla. 2001) ("Supplemental Rule E does not restrict review to the adequacy of the allegations in the complaint, nor does it echo the standards of the initial attachment that conditions *appear to exist*; rather Rule E requires plaintiff...show why the attachment should not vacated.").  Indeed, it is wholly reasonable to require only a minimal prima facie showing to obtain an ex parte maritime attachment because of the transitory nature of maritime assets, while requiring a showing of necessity to maintain the attachment.

7

Although Seaplus suggests that Judge Scheindlin's decision in Allied Maritime deviates from the law in this area, Allied Maritime is consistent with longstanding practice. It is clear that the ease with which a maritime attachment may be obtained makes that remedy particularly susceptible to abuse. Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119, 124 (S.D.N.Y. 1979); see also Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 384 F. Supp. 2d at 729. To prevent such abuse, courts have long recognized their responsibility to ask whether "plaintiffs' need for security is real" and their "discretion to set aside an unfair attachment" if it is not. Integrated Container Serv., Inc., 476 F. Supp. at 124 (S.D.N.Y. 1979).

Toward that end, the Southern District of New York developed procedures which were institutionalized in the former Local Admiralty Rule 12. Congress, in adopting Supplemental Rule E(4)(f), intended for the practices established in this district to extend nationwide. The Advisory Committee Note to the 1985 Amendment to Supplemental Rule E specifically referred to Local Rule 12 of the Southern District of New York, which contained language quite similar to that of Supplemental Rule E(4)(f). Supp. R. E, Fed. R. Civ. P., Advisory Committee Note, 1985 Amendment. Former Local Admiralty Rule 12 provided, in relevant part, "Where property is arrested or attached, any

person claiming an interest in the property arrested or attached, may <u>upon a showing of any improper practice or a manifest want of equity on the part of the plaintiff</u> to [sic] be entitled to an order requiring the plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted...." <u>See</u> <u>Chestnut Shipping Co. v. T-3 Freight, Ltd.</u>, No. 94 Civ. 1952 (PKL), 1995 WL 75485 at *1 n.3 (S.D.N.Y. Feb. 22, 1995) (emphasis added).

To the extent that Congress deviated from former Local Rule 12 in adopting Supplemental Rule E(4)(f), it was to make it easier to vacate an attachment under Supplemental Rule E(4)(f) than under Former Local Rule 12. Under Supplemental Rule E(4)(f), "any person claiming an interest" in attached property is automatically "entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated." Supp. R. E(4)(f), Fed. R. Civ. P. No showing of improper practice or a want of equity is required as under Former Local Rule 12.

Moreover, the Advisory Committee Note also indicates that the party requesting the post-attachment hearing provided for in Supplemental Rule E(4)(f) may challenge, among other things, "the security demanded" in the plaintiff's verified complaint. Supp. R. E, Fed. R. Civ. P., Advisory Committee Note, 1985 Amendment; <u>see</u> <u>also</u> <u>Winter Storm</u>, 310 F.3d at 272. There would

be no basis on which "the security demanded" could be attacked if the plaintiff bears only the burden of demonstrating that the plaintiff has a maritime claim and the defendant is not found within the district, and does not bear the additional burden of demonstrating that the security is necessary for some reason. The Advisory Committee Note refers to "the complaint" as a separate item a party may attack in a hearing under Supplemental Rule E(4)(f).

This conclusion is supported by considerable authority in this district. A standard similar to that adopted by the Court in this case was applied in Aqua Stoli. There the court held that "the plaintiff must show, by a preponderance of the evidence, that the attachment order not only meets all technical requirements but also is reasonably calculated to serve at least one of the two historical purposes of obtaining jurisdiction or securing a judgment and is not simply a tactical device designed to harass the adversary in an ongoing litigation."[1] 384 F. Supp. 2d at 729. The Aqua Stoli court added an additional requirement to the test: even if the plaintiff meets its burden, the motion to vacate the attachment may still be granted if the moving

---

[1] Seaplus argues that before the attachment can be vacated it must be shown to be vexatious or in bad faith. Judge Scheindlin did not require such a finding in Allied Maritime and, if the plaintiff fails to show that the attachment is necessary for one of the historic purposes behind Supplemental Rule B, there is no legitimate purpose for the attachment. Therefore, no separate showing of vexatiousness is required.

party shows, by a preponderance of the evidence, that "the hardship the attachment order imposes on it or others substantially outweighs any benefit to the plaintiff."  Id.

The court in Royal Swan Navigation Co. Ltd. v. Global Container Lines, Ltd., 868 F. Supp. 599 (S.D.N.Y. 1994), also concluded that where "the need for either of Rule B's recognized functions does not exist," it is "unfair" to permit a Rule B attachment.  Id. at 604-05; see also Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa, SA, 845 F. Supp. 150, 153 (S.D.N.Y. 1994), aff'd, 56 F.3d 359 (2d Cir. 1995) (finding no abuse of Rule B where "there was a substantial risk that [the plaintiff] would not be able to locate sufficient assets to satisfy its claims, which in turn were not frivolous").  Indeed, for at least twenty-five years, courts in this district have recognized their power "to set aside an unfair attachment" where it is not demonstrated that the "plaintiffs' need for security is real, that their quest for attachment is not a tactic of harassment."  Integrated Container Serv., Inc., 476 F. Supp. at 124.

Seaplus cites the decision of the Court of Appeals in Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa, SA for the proposition that a maritime attachment may not be vacated as long as the procedural requirements of Rule B have been satisfied.  (Pl. Mem. at 3.)  In that case the Court of

11

Appeals only held, however, that an initial attachment is available under Supplemental Rule B even where it is not necessary to obtain personal jurisdiction over the defendant. Cent. Hudson, 56 F.3d at 371. This principle has been applied in other cases, with the explanation often being that even when the attachment is not needed for jurisdiction, providing security for a potential judgment is also a purpose of Supplemental Rule B. See, e.g., Parkroad Corp., 2005 WL 1354034 at *2 (holding that, because there are two historic purposes for maritime attachments, an attachment remains available to obtain security rather than jurisdiction); HBC Hamburg Bulk Carriers, 2005 WL 1036127 at *5 (also holding that a plaintiff may seek maritime attachment with "the primary goal of attaining security"); Staronset Shipping Ltd. v. N. Star Navigation Inc., 659 F. Supp. 189, 190-91 (S.D.N.Y. 1987) (holding that, where Rule B's procedural requirements have been satisfied, maritime attachment is available even if obtaining security rather than jurisdiction is "the applicant's prime motive").

As explained above, these cases only hold that providing security to satisfy a judgment, one of the two recognized purposes of a Rule B attachment, is sufficient to justify an attachment. None of these cases holds that a court should decline to vacate an attachment in the absence of a showing that the attachment is needed to accomplish either of the two

purposes of Supplemental Rule B. To the contrary, HBC Hamburg contemplates a situation where security is in fact necessary. See HBC Hamburg, 2005 WL 1036127 at *5. In Parkroad Corp., moreover, the court was only ruling on the initial issuance of a maritime attachment and was not concerned with what standard should be applied in a hearing pursuant to Supplemental Rule E(4)(f). Parkroad Corp., 2005 WL 1354034 at *2.

One case supporting the proposition that no showing beyond satisfaction of the procedural requirements of Rule B is needed is the recent decision in Blake Maritime, Inc. v. Petrom S.A., No. 05 Civ. 8033 (PAC), 2005 WL 2875335 (S.D.N.Y. Oct. 31, 2005). In Blake Maritime, there was an argument that a higher standard should be applied to attachments of Electronic Fund Transfers passing through New York City as opposed to other forms of property.[2] The decision appears to rest in part on a reluctance to create what the court perceived of as "a new test" for this type of property alone. Blake Maritime, 2005 WL 2875335 at *2. Furthermore, although concluding that no showing beyond compliance with Supplemental Rule B is required, the court did in fact explore whether the attachment in that case was necessary to secure a potential judgment, and noted that there was no proof of the defendant's willingness and

---

[2] Such Electronic Fund Transfers, the same type of property attached by Seaplus in this case, have been deemed property subject to attachment under Rule B. See Winter Storm, 310 F.3d at 278.

13

ability to pay a future judgment.  Id. at *3-4.  Blake Maritime presented a situation where, on the evidence, the need for security was real.  To the extent that Blake Maritime is inconsistent with Allied Maritime and Aqua Stoli, the reasoning in Allied Maritime and Aqua Stoli is, as explained above, more persuasive.

## III.

Having concluded that Seaplus bears the burden of demonstrating, by a preponderance of the evidence, that the attachment is necessary to effectuate one of the two purposes of Supplemental Rule B, the Court must determine whether Seaplus has met that burden.

The plaintiff concedes that the order of maritime attachment in this case is not necessary to obtain jurisdiction over Bulkhandling.  The charter agreement between the parties provides for arbitration in Hong Kong, applying English law. (Time Charter, Exh. 2 to Honan Aff., § 17.)  According to its verified complaint, Seaplus has commenced such a proceeding, (Compl. ¶ 12.), and Bulkhandling is fully participating in that proceeding, having named an arbitrator as well.  (Affirmation of Karl-Johan Gombrii dated July 28, 2005 ("Gombrii Aff."), attached at Ex. 8 to Honan Aff., ¶ 6.)  There is therefore no basis for concluding that the attachment is necessary to obtain jurisdiction over Bulkhandling.  Accordingly, Seaplus "can only

14

justify the attachment by a showing that it needs the attachment for purposes of security." Allied Maritime, 2004 WL 2284389 at *2.

The parties disagree on whether the attachment is necessary to secure any award Seaplus may obtain in the Hong Kong arbitration. Seaplus argues that the attachment is needed because Bulkhandling has no assets of its own and is simply a pool operated for the benefit of the owners of the vessels in that pool. (Pl. Mem. at 5.) Bulkhandling counters that in 2004 it had revenues of almost $110,000,000 net of vessel-related expenses. (Bulkhandling Handymax AS Accounts at Dec. 31, 2004, attached at Ex. 6 to Honan Aff.)

Although Bulkhandling is a pool of vessels owned by other entities and has no fixed assets of its own, it has more than sufficient revenues to cover any award the arbitration panel in Hong Kong might render against it. There is also no evidence that the manner in which Bulkhandling is set up will enable it to avoid paying such an award or is designed to do so. The pool participation agreements into which Bulkhandling enters with vessel owners provide for pool participants to share all profits net of vessel-related costs, and those costs are shared by all vessel owners in the pool. (See Pool Participation Agreement, Ex. 1 to Reply Affirmation of William Honan dated August 29, 2005, ¶ 2.3.) Any liability Bulkhandling might have to Seaplus

on the underlying claim would be among those vessel-related costs and would be borne by the vessel owners in the pool in accordance with the pool participation agreement.

Bulkhandling's conduct since Seaplus initiated arbitration proceedings also does not demonstrate an intention to evade payment of a potential award against it. As explained above, Bulkhandling has appointed a panel member in the Hong Kong arbitration as provided by the charter agreement between the parties. There is no evidence to suggest that Bulkhandling will attempt to avoid paying any award entered against it should Seaplus prevail on its claim.

On the record before it, the Court concludes that Seaplus has not shown by a preponderance of the evidence that the attachment is necessary to secure any damages it might be awarded in the Hong Kong arbitration. Accordingly, the Court will vacate the order of maritime attachment.

**IV.**

Bulkhandling's alternative requests to reduce the amount of the attachment or to substitute a letter of understanding are denied as moot.

**V.**

Bulkhandling additionally moves for countersecurity for its costs and attorneys' fees should it prevail in the Hong Kong arbitration. The motion cites Supplemental Rule E(7), which

16

requires a plaintiff whose claims against the defendant are secured likewise to post security for damages demanded by the defendant in a counterclaim against the plaintiff unless the Court finds cause to direct otherwise. Supp. R. E(7)(a), Fed. R. Civ. P. Countersecurity under Supplemental Rule E(7), however, is plainly limited to security needed for "damages demanded in [a] counterclaim" arising "from the transaction or occurrence that is the subject of the original action." Id. Counterclaims falling within the purview of Supplemental Rule E(7) are akin to compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure. Compare Supp. R. E(7)(a), Fed. R. Civ. P., with R. 13(a), Fed. R. Civ. P.; see also Goudy & Stevens, Inc. v. Cable Marine, Inc., 665 F. Supp. 67, 71 (D. Me. 1987).

Because the Court has vacated the attachment previously granted to the plaintiff, one of the preconditions for security under Supplemental Rule E(7) is not met. Bulkhandling conceded at the argument of the current motions that it would not seek security under Supplemental Rule E(7) if the attachment was vacated. The request for counter-security is therefore denied.[3]

---

[3] The request for counter-security under Supplemental Rule E(7) faced an additional hurdle. There was no counterclaim asserted in the Hong Kong arbitration, but only a request for costs and attorneys' fees. Bulkhandling conceded at oral argument that the claim for security should have been asserted under Supplemental Rule E(2)(b), which authorizes a court to require a party to give security to pay all costs and expenses that shall be awarded. But Bulkhandling only

17

## CONCLUSION

For the reasons stated above, Bulkhandling's motion pursuant to Supplemental Rule E(4)(f) to vacate the process of Maritime Attachment is **granted**. The Ex Parte Order for Process of Maritime Attachment dated May 19, 2005 is hereby **vacated** and all property of Bulkhandling attached under that order is to be released. Bulkhandling's motions for reduction of the amount subject to attachment and for substitution of a letter of understanding are **denied as moot**. Bulkhandling's motion for countersecurity under Supplemental Rule E(7) is **denied**.

**SO ORDERED.**

**Dated: New York, New York
December 13, 2005**

/s/ John G. Koeltl
John G. Koeltl
United States District Judge

---

relied on Supplemental Rule E(2)(b) in its reply brief. A request in a reply brief is not an appropriate basis for a motion.